IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


UNITED STATES OF AMERICA,

                Plaintiff,

    v.

JOSE LIZARRARAS-CHACON,

                Defendant.

No. 03:11-CR-00517-HZ

OPINION & ORDER


Ellen C. Pitcher
C. Renee Manes
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

      Attorneys for Plaintiff

Leah K. Bolstad
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

      Attorney for Defendant


1 - OPINION & ORDER

HERNANDEZ, District Judge:

Defendant Jose Lizarraras-Chacon is charged with conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin.  Defendant moves to suppress evidence obtained from the search of his apartment and post-arrest statements that he made while in custody.  An evidentiary hearing was held on September 6, 2012.  I denied the motion in a minute order on October 22, 2012, with an opinion to follow.  Dkt. #113.

## BACKGROUND

On November 29, 2011, the Portland Police Bureau used an informant to set up a controlled purchase of heroin from Defendant and his wife, Maria Gonzalez-Torres.  Officers had set up surveillance at the couple's apartment, and followed them as they drove away.  While driving on NE 181st Avenue, police pulled Defendant over for failing to signal 100 feet before making a lane change.  Officer Groshong asked Defendant for his license, registration, and proof of insurance to check his record.  Knowing about the controlled purchase of heroin that had been set up, Officer Verbout asked both Defendant and Gonzalez-Torres for permission to search the automobile.  Both agreed to let Officer Verbout and his K-9 search the car.  Nothing turned up in this search.

Officer Verbout observed lumps under Gonzalez-Torres's shirt and asked her to step out of the automobile.  Gonzalez-Torres denied having any drugs on her.  Officer Verbout asked for permission to pat her down.  Gonzalez-Torres consented, but Officer Verbout did not find anything.  He then asked Gonzalez-Torres if she would consent to a search by a female officer.  She acquiesced.  Officer Hutchison arrived 10 minutes later to search Gonzales-Torres.  She found five ounces of a brown substance, which appeared to be heroin, in Gonzalez-Torres's bra.  Officer Hutchison placed Gonzalez-Torres under custody and Officer Verbout read her <u>Miranda</u>

rights in Spanish. Gonzalez-Torres confirmed that the brown substance was heroin. She also denied having any additional heroin on her or at their apartment. Officer Verbout asked for permission to search the apartment, and Gonzalez-Torres consented. Officers accompanied Gonzalez-Torres back to the family's apartment. She signed a consent form to search the apartment and provided a key to open the door. Officers found $84,249 in cash, 470 grams of heroin, and a semi-automatic handgun.

Defendant was also placed into custody and given his <u>Miranda</u> rights in Spanish. When Officer Verbout began to ask Defendant questions, he stated in Spanish that he wanted to speak with an attorney. Officer Verbout stopped questioning Defendant and he was transported to a holding cell at the Portland Police Bureau. Later that day, Officer Manzella checked on Defendant, who stated that he wished to speak with the officers. Officer Verbout reminded Defendant that he had the right to speak with an attorney, but Defendant stated that he wanted to speak with the officers instead.

Officers Verbout and Manzella took Defendant to an interview room and began to record the conversation. Officer Verbout gave Defendant his <u>Miranda</u> rights again in Spanish. Officer Verbout again asked if Defendant wanted to speak with an attorney or the officers. He responded that he wanted to speak with the officers. Defendant admitted that the heroin in the automobile was his and disclosed names and telephone numbers of his heroin suppliers. He also gave written consent to a search a safe in his apartment and his cell phone.

DISCUSSION

I.    **Apartment Search**

Defendant Lizarraras-Chacon moves to suppress evidence discovered during the search of his apartment. He argues that his wife's consent to search their apartment was not voluntary.

The government must prove that consent to search is voluntary by a preponderance of the evidence.  United States v. Matlock, 415 U.S. 164, 177 (1974).  A consent given to search is valid if the consent was freely and voluntarily given and not the result of duress or coercion, express or implied.  Whether the consent given to search was freely and voluntarily given is a question of fact to be determined by the totality of the circumstances.  Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973).

The factors that a court considers in determining whether the consent to search was voluntary may include, but are not limited to: (1) whether the defendant was in custody; (2) whether the arresting officer had his gun drawn; (3) whether Miranda warnings were given prior to the search; (4) whether the defendant was told he had the right to withhold consent; and (5) whether the officers claimed that they could obtain a search warrant.  United States v. Vongxay, 594 F.3d 1111, 1119-20 (9th Cir. 2010).  "All five factors need not be satisfied in order to sustain a consensual search."  Id. at 1120 (citing United States v. Cormier, 220 F.3d 1103, 1113 (9th Cir. 2000)).

After the officers found the heroin on Gonzalez-Torres, she was taken into custody and given her Miranda warnings in Spanish.  Officers then asked to search the family's apartment. Gonzalez-Torres consented verbally at the traffic stop location, and then signed a consent form once they had returned to the apartment.  Although Gonzalez-Torres was in custody, "[a] person in custody is capable of giving valid consent to search."  United States v. Lindsey, 877 F.2d 777, 783 (9th Cir. 1989) (citing United States v. Watson, 423 U.S. 411, 424 (1976); United States v. Tolias, 548 F.2d 277, 278 (9th Cir. 1977)).

Defendant argues that Gonzalez-Torres's consent was not voluntary.  Defendant primarily relies on a statement, allegedly written by Gonzalez-Torres, which describes the events

of November 29, 2011.  Def.'s Post-Hearing Memo., 9; Exhibit #101.  Defendant states that

Gonzalez-Torres's attorney, Michele Kohler, gave the statement to Defendant's attorney, Ellen

Pitcher.  Defendant had subpoenaed his wife and co-defendant Gonzalez-Torres to testify, but

she asserted her Fifth Amendment right against self-incrimination.  Aug. 29, 2012 Minutes of

Proceedings, Dkt. #99 (order granting Gonzalez-Torres's motion to quash subpoena).  Neither

Gonzalez-Torres nor Ms. Kohler is willing to authenticate the statement.[1]

The Government objects to the admissibility of the statement because (1) there is a lack

of authentication and (2) Gonzalez-Torres did not waive her attorney-client privilege.  Sept. 6,

2012 Hearing Transcript ("Tr.") 5-6; Govt.'s Resp., 5.  The typed, unsigned, and undated

statement was not subject to cross-examination to test its veracity.  I also do not know the

circumstances under which it was written.  I sustain the Government's objection to the statement

for lack of authentication.  Additionally, I do not find the statement to be credible when weighed

against the testimony of the police officers.  As for the attorney-client privilege objection, I need

not address it given my ruling on the lack of authentication.

The evidence from the hearing shows that officers did not draw their guns or threaten

Gonzalez-Torres to obtain her consent to search the apartment.  Gonzalez-Torres had been given

Miranda warnings.  Though officers did not advise her that she could refuse the search, they did

not claim they could obtain a search warrant.  Defendant argues that the consent was not

voluntary because Gonzalez-Torres was affected by her children, who were upset and crying.

Def.'s Post-Hearing Memo., 12.  Although there is evidence that the children cried intermittently

throughout the day, there is also evidence that the police officers were sensitive to the children's

reactions.  Tr. 163-65.  Gonzalez-Torres was uncuffed so that she could breastfeed her infant, Tr.

---

[1] Defendant has produced email exchanges between Ms. Pitcher and Ms. Kohler regarding the statement, but Ms. Kohler has refused to submit a declaration or testify due to ethical concerns. Def.'s Post-Hearing Memo., 10.

165, and Officer Hutchison fed the children peanut butter and jelly sandwiches and juice. Tr. 167-68.

I find that Gonzalez-Torres voluntarily consented to the search of the apartment. She initially gave a verbal consent, and in reaffirmed the consent in writing. Gonzalez-Torres had time to reconsider her consent during the ride back to the apartment, but did not withdraw her consent. Lindsey, 877 F.2d at 783 (affirming finding of voluntary consent based on several factors, including the fact that defendant had time to reconsider verbal consent before giving written consent). Her children were understandably upset, but not to the point where Gonzalez-Torres would have felt forced to consent to the search of the family's apartment.

## II.    Custodial Statements

Defendant seeks to suppress statements that he made while in custody. An officer's obligation to give a suspect Miranda warnings before an interrogation extends only to those instances when the individual is "in custody." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). For a statement made during a custodial interrogation to be admissible, any waiver of constitutional rights must be voluntary, knowing, and intelligent. Miranda v. Arizona, 384 U.S. 436, 479 (1966). A valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979).

The government has the burden of showing a valid waiver. Butler, 441 U.S. at 373. The test for voluntariness is "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." Derrick v. Peterson, 924 F.2d 813, 817 (9th Cir. 1990) (quoting United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988)). To be knowing

and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986).

Here, Defendant was taken into custody and given his <u>Miranda</u> rights in Spanish. He invoked his right to counsel and officers stopped questioning him. Once a suspect has invoked the right to counsel during interrogation, the suspect may not be subjected to further police interrogation "'unless the accused [her]self initiates further communication, exchanges, or conversations with the police.'" <u>United States v. Michaud</u>, 268 F.3d 728, 735 (9th Cir. 2001) (quoting <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981)). Officer Manzella checked on Defendant later in the evening to ask about a different name that Defendant may have used to register his cars. It was then that Defendant requested to speak with the officers.

Defendant argues Officer Manzella's question about Defendant's name was an improper attempt to resume the interrogation. "[C]ustodial questioning constitutes interrogation whenever, under all the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect." <u>United States v. Booth</u>, 669 F.2d 1231, 1237 (9th Cir. 1981) (quotation omitted). Questions about identity are not likely to elicit an incriminating response. <u>Id.</u> I find that Officer Manzella's inquiry was not an interrogation.

The remaining issue is whether Defendant voluntarily, knowingly, and intelligently waived his <u>Miranda</u> rights. The interview was recorded and the transcript confirms the following events. Officer Verbout read Defendant his Miranda rights in Spanish again and reminded Defendant that he had requested an attorney. But Defendant insisted that he wanted to speak with the officers instead. The officers told him that they were not offering him any incentives or promises in exchange for his statements. Defendant responded that he understood. Defendant

now argues that before the recording started, the officers had promised to release his wife, Gonzalez-Torres. Def.'s Post-Hearing Memo., 6. It is clear from the interrogation transcript that Defendant understood that no promises had been made concerning the case. Govt.'s Mot. Suppress Ex. 5 at 1. Furthermore, there is no indication that the officers coerced Defendant to speak with them. I find that Defendant voluntarily waived his Miranda rights.

CONCLUSION

Based on the foregoing, Defendant Lizarraras-Chacon's motion to suppress (#60) is denied.

IT IS SO ORDERED.

Dated this 29 day of October, 2012.

MARCO A. HERNANDEZ
United States District Judge